(Cuyahoga County Common Pleas.)
Delivered June 21, 1900.

WASHINGTON H. LAWRENCE v. JOHN MITCHELL, G. M. WINSLOW and JOSEPH SCHWARTZ, Trustees of Dover T'p., Cuyahoga, O.

———

(1). Courts can not by injunction interfere with public elections. An election by the voters of certain territory in the township which it is proposed to incorporate as a hamlet can therefore not be interfered with by injunction.

(2). The same remedies are given interested parties in proceedings to incorporate a hamlet had before township trustees as may be had before county commissioners for the incorporation of hamlets out of "allotted" territory.

(3). Sec. 1561c, R. S., gives to persons interested in the proposed incorporation of certain territory in a township as a hamlet, the right to petition the court of common pleas for a review of the proceedings had for such incorporation by the township trustees, on the grounds enumerated in such section, and for an injunction against the recorder to re-

strain him from making the record thereof and certifying the transcript required by the statute. In view of these statutory remedies an injunction to re strain the elect·on by the voters of the respective territory to be incorporated ordered by the township trustees can not be granted.

(4). Where a petition for the incorporation of certain territory as a hamlet is filed with the clerk of the township trustees, and subsequently on the same day another petition for the same purpose, but differing from the first in boundaries of the proposed hamlet, is presented to the trustees at their session on that day, and both petitions were before them at that session, the trust ees, in the absence of fraud, have the discretion to adopt a resolution for an election in accordance with the petition filed last.

(5). The statute authorizing the incorporation of hamlets under proceedings before township trustees is not unconstitutional as a delegation of power by the legislature.

———

STONE, J.

This action is brought to restrain the defendants as trustees from conducting a certain election which they are proposing to hold on the 23rd day of the present month, in Dover township, which election is called to vote upon the question whether Dover township shall be erected into a hamlet in accordance with the statute making provision for the creation of hamlets.

It appears from the pleadings, that on the 7th day of April, 1900, two petitions were presented to the trustees of Dover township, the purpose of each being to create or take the initial steps toward the creation of a hamlet.

One is known as the Mathews' petition, requiring trustees to order an election upon the question as to whether the northerly portion of Dover township should be erected into a hamlet; that is, that portion of Dover township lying north of the south line of the New York, Chicago & St. Louis Railroad, to be known as the "Hamlet of Bay".

The other petition, known as the Hurst petition, asks the trustees for an election upon the question of creating a hamlet out of the whole territory of Dover township. And this action is brought to enjoin an election ordered by the board of trustees upon the Hurst petition.

The petition is somewhat lengthy, but after reciting the fact of the filing of the Hurst petition and a compliance with the provisions of section 1561a, of the Revised Statutes, it then gives a copy of the petition addressed to the trustees of Dover township, describing the territory sought to have erected into a hamlet, stating the number of inhab-

itants that the proposed corporation has, the proposed name of the hamlet, the names of the persons who are acting as agents of the petitioners, the fact that the petition was accompanied by a map describing the proposed territory or the territory proposed for incorporation, and the signatures of more than thirty electors residing within the territory described in said petition, and a majority of whom are free-holders.

The petition finally recites the objections that are urged or that are said to exist against the action of the trustees in this regard. And one claim is that, before the Hurst petition was presented to the trustees for the incorporation of the whole township, the Mathews petition for the incorporation into a hamlet, of part of the township was on file in the hands of the trustees, and that it was their duty to order an election upon the Mathews petition. That it does not rest within the discretion of the trustees to elect between said petitions presented to them on the 7th of April, but that they were bound by law and in good conscience to proceed to consider and act upon such petitions in the order of their presentation.

It is alleged that even if it did lie within the discretion of said trustees to consider and act upon the petition of Hurst and others, before considering and acting upon the Mathews petition, it would be wholly inequitable and work irreparable injury to the plaintiff and the residents of the northern portion of the township of Dover if such trustees should be permitted to take such action as would result in the creation of a hamlet containing all the territory now included within the township of Dover.

There is a further allegation, too, that there is a petition for mandamus pending in this court, awaiting action on the Hurst petition, and that if the Hurst petition should result in the incorporation of the whole township, it would render futile the proceedings under the alternative writ of mandamus. That the smaller territory would be swallowed up by the larger. That while said smaller territory proposed to be incorporated as the Hamlet of Bay is suitable in size and character for hamlet purposes, yet it is said, the territory described in the Hurst petition includes all the territory lying within the boundaries of Dover township, and is made up of farm lands, in very large measure unallotted and used solely for agricultural purposes; and that such unallotted territory or land constitutes a vast proportion and majority of the territory of the township, and is wholly unsuited for the purposes for which villages and hamlets are incorporated; that the territory thus sought to be incorporated would make a hamlet unduly large; and

that a hamlet is a municipal corporation, and as such may exercise powers under the statutes of Ohio wholly inapplicable to the territory sought to be incorporated by the Hurst petition.

Complaint is also made that by this proposed change, if it shall be brought about by virtue of an electon under the Hurst petition, it will largely increase the taxes of the township, and whereas now the trustees may levy for taxes, a township tax not exceeding one-fourth of one mill upon each dollar of taxable property therein; that should the Hurst petition be granted and the entire territory of said township be incorporated as a hamlet, the trustees thereof would be authorized to levy a tax of ten mills upon each dollar of taxable property therein; that while plaintiff and other taxpayers living within the territory proposed by the Mathews peition to be incorporated as the Hamlet of Bay are willing to be taxed for purposes falling justly and reasonably within the scope of a municipal corporation of the grade to which the proposed Hamlet of Bay would belong, they are wholly unwilling to pay, and it is inequitable that they be required to pay, taxes at a larger rate than now authorized by law if the same are to be diverted from such reasonable and useful purpose and made to contribute to agricultural regions at rates applicable only to municipal corporations.

And it is said that if the trustees are permitted to go on and hold this election according to notice, and thereafter deliver to the county recorder a transcript of their proceedings, and should said recorder thereupon certify and forward to the secretary of state said transcript, said corporation will then claim to be a hamlet in accordance with the provisions of the sections of the statutes to which I have referred, to the irreparable injury of this plaintiff, and that costly and vexatious litigation will follow; that the proposed election is an abuse of corporate power of the township and without warrant of law—and for these reasons, they ask that the court enjoin these defendants from further proceeding with this election.

By the answer of the defendants, issue is taken to the petition of the plaintiff, upon his claim that the Mathews petition was first presented; but claim, on thse contrary, that the Hurst petition was first presented.

The real facts are, as shown by the evidence, that, on the 7th of April, the Mathews petition was handed to the clerk of the township at 8:30 in the morning and by him marked upon the back thereof, "Filed April 7, 1900, at 8:30 A. M."

The Hurst petition was taken by the agent of the petitioners to the meeting of the trustees at the town hall, and laid upon the table, and by the clerk endorsed "April 7, 19(0. 12.30 P. M." and was probably the first of the two petitions to which the attention of the board of trustees, when in session was called; that is, their attention was first called to the Hurst petition, although it was, a I have indicated, marked by the clerk of the township, "Filed at 12:30."

Returning to the answer, they take issue with the claim that the petition presented by Mathews and others, contained an accurate description of the territory to be embraced in the contemplated township, and they deny that the map accompanying the petition was an accurate map of the territory.

They deny that their action under the said petition presented by Hurst and others, before acting upon the petition presented by Mathews and others, would be inequitable, or that it would work irreparable injury to the plaintiff, or to any resident of any portion of said township of Dover, or that it would render futile any writ of mandamus issued, or to be issued, by this court; and they deny that the territory of said entire township is wholly unsuitable for the purposes of a hamlet, or that the incorporation thereof would make a hamlet unduly large, or that it would result in costly and vexatious litigation.

Then they set out the fact of the presentation of the first petition, and their taking advice of the county solicitor, concerning their duties; that finally they received from him his opinion concerning the law of the case and their duties arising upon the presentation of the petition.

They admit that they acted favorably upon the Hurst petition, acting upon the advice of counsel, and have called this election, and are proceeding to and expect to hold the election on the 23rd of the present month. They say that if, at that election, and as a result thereof, the proposed incorporation of Dover hamlet shall not be assented to by the voters of said territory, that is, if the result of that election be against the incorporation of the whole township as a hamlet, they will then proceed, after the correction of what they regard as some inaccuracies in the other application, to call for an election to vote upon the petition to incorporate the northrern portion of the township into a hamlet according to the prayer of the Mathews petition, and they say that they will do that without any order from the court.

The case has been presented upon such evidence as the parties cared to offer, and there is practically no conflict in the evidence. The facts as they exist are substantially admitted. The circumstances or the time rather,

of the filing of the petitions with the trustees, I have already sufficiently canvassed to indicate what the facts were.

In the view of the conclusions to which I have come in this case, it is not very material which petition was in fact actually filed first with the trustees. They had both of them before them for their consideration; they were filed the same day, and whether, as a matter of law, the filing with the clerk, was a filing with the trustees is not important I think, to be determined. They were filed the same day, they had both petitions before them for consideration at the same time; and in view of the complications thus created, or thus arising, they sought advise from the county solicitor, and postponed their actions from time to time until such advise was obtained; and then considering both cases, or rather considering the whole subject, they elected to adopt a resolution to conduct an election in accordance with the prayer of the Hurst petition and, in the doing of that in the absence of any fraud, I am inclined to think they had the discretionary power to determine which petition they would direct a vote upon. But it is, perhaps, hardly essential to have gone to that extent or to have expressed any opinion concerning their action in that regard.

Two questions are presented in this case, which to my mind are conclusive of the rights of the parties in this action.

First, it is claimed by counsel for defendants, that the action is premature—premature because the statute points out a remedy for any wrong that may be done in the carrying forward of proceedings of this sort, under sections 1561a, 1561b 1561c. Another objection which I regard as of equal consequence, is the one that an injunction will not lie to restrain the carrying forward of a public election.

Returning now to the first objection that is made. The sections to which I hav referred, sections 1561a, b. and c, are the authority for the steps taken by the trustees. The first section provides for a petition to the township trustees for incorporation. Section 1561b fixes the procedure that shall be had upon receipt of the petition. Section 1561c provides for the election, and it also provides for a remedy by injunction or petition in error for a review of the proceedings had.

It is unnecessary to read these sections at this time. But, after providing for the time and manner of procedure for the election, it is provided in the latter part of section 1561c:

"The corporation shall then be a village or hamlet, as the case may be, under the name adopted in the petition,

with all powers and authorities, and be recognized as such, the same as if such incorporation had been organized under chapter 2. division 2, title 12 of the Revised Statutes of Ohio, but no injunction shall be brought, as provided in section 1562 of the Revised Statutes of Ohio" (which is the last section in numerical order), "unless the same be instituted within ten days from the filing of the papers with the county recorder; provided, however, that the right of petition to the court of common pleas for error, shall exist as is provided for in the following sections of this chapter."

Section 1562 provides, under the title of. "Injunction against recorder":

"Any person interested may, within sixty days from the filing of the papers with the recorder, as above provided, make application by petition to the court of common pleas, or, if during vacation, to a judge thereof, setting forth the errors complained of, or the inaccuracy of the boundaries, or that the limits of the proposed corporation are unreasonably large or small, or that it is not right, just, or equitable that the prayer of the petition presented to the board of commissioners be granted, or containing any or all of such averments, and praying an injunction restraining the recorder from making the record and certifying the transcript, as above required."

The original law only provided for proceedings of this character before county commissioners, and it is only in recent years that there was added to this statute these sections that authorize proceedings of this character to be brought before township trustees. It is clear, I think, that the same remedy is given in proceedings of this sort had before township trustees as may be had before county commissioners under other provisions of the statutes, for the incorporation of hamlets out of what is known as "allotted territory." So that, this is to be said: If the proceedings now going forward, under the Hurst petition are unauthorized, or if there is any error in the proceedings; if the boundaries are inaccurate, if the proposed limits are unreasonably large or small, or if it is not right, just or equitable that the prayer of the petition be granted, in this case, by the board of trustees of the township—the court may, by its order, reverse the proceedings or set them aside.

So that it can hardly be true to say that these proceedings, or this election will work to the plaintiffs "an irreparable injury," when the whole proceeding is subject to review before the court in the event that the election shall, carry. It is not at all certain that any harm will come to the petitioners now, before the election, for the election may

not result favorably to the petitioners and, if not, of course no harm has been done.

Another objection to which I have given some attention is, that courts ought not by injunction to interfere with public elections; and I have examined a number of cases upon that subject, which, it seems to me, are pertinent in the consideration of this question.

The case of Harris v. Schryock et al., 821 Ill., 119, was a suit that involved the power to hold an election. The syllabus is to this effect:

(1). "The provision the statute giving the board of supervisors power to form new towns, and to divide or enlarge towns, requiring a vote in case an incorporated town is to be divided, refers to incorporated towns and villages, and not to towns under the township organization law; and where no such incorporated town or village is to be divided, by any change of boundaries or the formation of a new town, no vote is required."

(2). "The power to hold an election is political and not judicial, and a court of equity has no jurisdiction to restrain officers from the exercise of such powers."

Mr. Justice Walker in delivering the opinion says:

"But according to the repeated decisions of this court, the power to hold an election is political and not judicial, hence a court of equity has no power to restrain officers from the exercise of such powers."

And the judge, in support of that proposition, refers to the case of Dickey v. Reed et al., 78 Ill., 261, which is, perhaps, the most celebrated case of the kind in the state. In that case, the city of Chicago was about to hold an election under a recent act of the legislature, to determine whether it could adopt a new charter. The board of aldermen had called the election, and the election had been held, I believe, and the canvassing board was about to canvass the returns and declare the result; and it was sought to enjoin this board from canvassing such returns, on the ground that a great number of illegal and fraudulent votes had been cast. The suit was brought by the prosecuting attorney and five other citizens of the city of Chicago. The defendants were the forty aldermen, of the city. A restraining order was granted the plaintiffs, whereupon the board of alderman employed eminent counsel, who advised the board in writing, that the court had no power to grant an injunction, and advised them to disobey the order, and the board did so. Sometime after this opinion was given, these legal gentlemen were brought into court to answer for contempt of court, and each of the aldermen was fined $100, and each of the counsel $300. Upon appeal the court considered this case at great length and held that under the conditions that existed in that case, the court had no power to grant an injunction, and, therefore, the parties were not in contempt for disobeying the court's order. They were all discharged.

The court said, in the 2nd branch of the syllabus: "A court of chancery has no power to restrain, by injunction, a board of canvassers from canvassing the returns of an election, where the law under which the election was held, neither in terms nor by implication confers such power, and where there are no facts before the court which require it to take judicial cognizance, and here, adjudicate a decree.

(3). "While the writ of injunction is one of the most important in the law, and is, in fact, indispensable to the complete administration of justice, it is liable to great abuse, and it would not be wise, nor would it promote justice, to extend its use to cases of doubtful right, or to accomplish ends where there are other adequate remedies.

(4). "A writ of injunction, issued in a matter where the court could not, under any circumstances, have power to hear, determine and decree in reference to such matter, is coram non judice, and void.

(5). "When issued by a court having no power, need not be obeyed—Where a writ of injunction is issued by a court which has power over the subject matter, and authority to take jurisdiction, it must be obeyed; but where the power of the court is wholly wanting, the writ is void, and can legally operate on no one, nor can any one be punished for contempt for disobeying it."

There is one other case to which I will refer, the People of the State of Illinois on relation of John C. Fitnam v. City of Galesburgh, 48 Ill., 485. The syllabus is as follows:

"Jurisdiction in chancery—Where there is a remedy at law, a court of chancery has no power to prevent the holding of an election of officers, upon the alleged ground of a want of authority to hold such an election, the remedy therefor being complete at law, by the writ of quo warranto."

That was a case to restrain the city of Galesburg to elect supervisors to represent the city in the board of Knox county. And it was in the opinion in that case, that the court said:

"A temporary injunction is but a matter of discretion, and a court would hesitate long before granting an injunction to stop the holding an election, or to prevent an officer from entering upon the discharge of official duties, even if equity had jurisdiction, at least until

after a final hearing of the case. We are aware of no well-considered case which has enjoined the holding of an election, or prevented an officer of the law from giving the required notices for. or the certificate of election. To sanction the practice of granting temporary injunctions in such cases, would be highly calculated to obstruct the various branches of government in the administration of public affairs. Courts of equity can have no such power, otherwise any and all elections might be prevented, and government greatly embarrased."

In Holmes & Gray et al. v. Oldham et al. vol. 1 U. S. Cir. Ct. Rep., 4th Circuit, the court held:

"A bill of injunction will not lie in the United States circuit court to enjoin defendants, who are registering officers and free-holders of election in a city or a state, from registering voters or holding an election in pursuance of state legislation and municipal charter."

The constitutionality of the statute; under which these proceedings were had, is questioned by counsel for plaintiff, in that this statute involves on the part of the legislature, an effort to delegate legislative power, and is therefore void. I do not think there is anything in this legislation, so far as the referedum clause is concerned, that renders it open to constitutional objection.

The case of the Cincinnati, Wilmington & Zanesville R. R. Co. v. The Commissioners of Clinton County (1 Ohio St., 77), decided by Judge Ranney, was a case where the county of Clinton, as I remember from reading it, voted to bond the county for $200,000 to aid in the construction of a railroad known as the Cincinnati, Wilmington & Zanesville R. R., and a majority of the qualified voters approved of it; and the question subsequently arose as to the validity of the proceedings. The syllabus in part is as follows:

"The power of the general assembly to pass laws can not be delegated by them to any other body, or to the people."

The criticism suggested here, is that this was a delegation of power, and that for that reason, they ought not to be permitted to maintain this action. But Judge Ranney, in that very case, saw nothing to criticise in respect to that claim. He says, after some preliminary observations:

"And this brings us to the specific objections relied upon to show the act in question a nullity. They are: 1st. That the act was not passed into a law by the general assembly, but was made to depend for its effect upon a vote of the people of Clinton county; and this involves an attempt on the part of that

body to delegate legislatives power."

I will not take the time to read what Judge Ranney so well and so clearly says, other than these words:

"But while this is so plain as to be admitted, we think it equally undeniable, that the complete exercise of legislative power by the general assembly does not necessarily require the act to so apply its provisions to the subject matter as to compel their employment without the intervening assent of other persons, or to prevent their taking effect only upon the performance of conditions expressed in the law.

"Indeed, the whole body of our legislation, as well as that of every other state, is divided between laws which imperatively command or prohibit the performance of acts, and those which only authorize or permit them."

This decision would seem to be opposed to counsel's contention. I am unable to see from any view I may take, of this case, upon what theory the action can be maintained, and for the reasons given the prayer of this petition must be denied, and the petition dismissed.

Garfield, Garfield & Howe and William O. Mathews, for Plaintiff.

County Solicitors Kaiser and Taft and Geo. L. Phillipps, for Defendants.